IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELIZABETH BRADLEY                    :

                                 :

    v.                            :   Civil Action No. DKC 19-2662

                                 :

VETERINARY ORTHOPEDIC SPORTS         :
MEDICINE GROUP, et al.

                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this veterinary malpractice case are three motions.  Plaintiff Elizabeth Bradley moves (1) for leave to amend, and (2) for application of New Jersey law, rather than Maryland law, to the damages available on her veterinary malpractice claim.  (ECF No. 44).[1]  Defendants Debra Canapp, Sherman O. Canapp, Jr., Ryan Gallagher, Spine Center at Veterinary Orthopedic Sports Medicine Group ("the Spine Center"), and Veterinary Solutions, LLC cross-move (3) for partial judgment on the pleadings for the failure to obtain informed consent claim. (ECF No. 48).[2]  The issues have been briefed, and the court now

---

[1] Ms. Bradley seeks to apply New Jersey law broadly to all "respective claims and defenses," but only addresses the damages available on her malpractice claim.  (ECF No. 44-2, at 2, 6-7).

[2] In her original complaint, Ms. Bradley named the three individuals and the Veterinary Orthopedic Sports Medicine Group ("VOSM").  (ECF No. 1, at 9).  Defendants later disclosed that VOSM was not an independent entity and was instead the business name for the Spine Center at VOSM and Veterinary Solutions, LLC.

rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, the motion to declare that New Jersey law governs malpractice damages will be denied, the motion for partial judgment on the pleadings will be granted, and the motion for leave to amend will be granted in part and denied in part.

## I.   Factual Background

Plaintiff Elizabeth Bradley is a professional dog trainer who owns, breeds, trains, and shows German Shepherds, some of which have won national competitions and generate income.  (ECF No. 10, ¶¶ 50-52, 54-55).  One is a German Shepard named Fyte.  (*Id.*, ¶¶ 2, 56).  Fyte had considerable success in competitions in 2015 and 2016.  (*Id.*, ¶¶ 60-65).  In January 2017, "Fyte began showing pain during training sessions" which then got progressively worse. (*Id.*, ¶ 66).  An MRI identified an issue with Fyte's spine and Ms. Bradley was referred to Defendant Sherman Canapp for surgery but ultimately made an appointment with Defendant Ryan Gallagher after discussing Fyte's symptoms with a receptionist.  (*Id.*, ¶¶ 67-69, 76).  During an in-person consultation, Dr. Gallagher recommended spinal stabilization surgery.  (*Id.*, ¶ 77).  Doctors Sherman Canapp, Debra Canapp, and Ryan Gallagher own, and practice

---

ECF No. 44-9, ¶ 13).  All consented to Plaintiff filing an amended complaint substituting the two other entities for VOSM, which Plaintiff did.  (ECF Nos. 9, ¶ 2; 10 at 1).  However, VOSM remains a party on the docket.  The Clerk will be directed to dismiss VOSM as a party to this case.

veterinary medicine, at VOSM, the business name for Defendants Veterinary Solutions, LLC and the Spine Center. (*Id.*, ¶¶ 4-48).[3]

The surgery was performed on March 20. (ECF No. 10, ¶ 78). After he was discharged, Ms. Bradley returned with Fyte to New Jersey and followed instructions to limit Fyte's movement for several weeks. (*Id.*, ¶ 79-81). On March 30, "the area around Fyte's surgical staples was red and swollen." (*Id.*, ¶ 82). VOSM told Ms. Bradley to apply hot compresses and continue pain medication. (*Id.*). On April 13, "Fyte tried to move and started crying out in pain." (*Id.*, ¶ 83). A veterinary technician told Ms. Gallagher to increase the pain medications. (*Id.*, ¶ 84). This didn't resolve Fyte's pain and, on April 17, Dr. Gallagher told her to bring him back to VOSM's facilities in Maryland. (*Id.*, ¶ 85). During an examination the next day, Dr. Gallagher concluded Fyte had a muscle strain unrelated to the surgery and recommended that Fyte begin rehabilitation at VOSM. (*Id.*, ¶ 86).

A week later, Fyte's condition had not improved and Dr. Gallagher ordered an MRI which revealed that Fyte had "an infection at the surgical site," later identified as Meth-Resistant Pseudintermedius ("MRSP") bacteria. (ECF No. 10, ¶¶ 87-92, 94). Following emergency surgery, Dr. Gallagher recommended treating

---

[3] This opinion refers to the veterinary practice at issue as VOSM and does not differentiate between Veterinary Solutions, LLC and the Spine Center.

Fyte's infection with a drug called Baytril rather than a drug called Amikacin. (*Id.*, ¶ 95). Although Amikacin "would definitely kill the MRSP[,] . . . Baytril was an intermediary drug whose potential side effects were less severe[.]" (*Id.*). A little more than two weeks later, on May 20, the infection returned. (*Id.*, ¶ 99). Dr. Gallagher was nevertheless unable to determine the cause of the dog's pain. (*Id.*, ¶ 103). Ms. Bradley ultimately consulted with a different Maryland veterinarian, Dr. Daniel Negola, who concluded that Fyte "should not have been given Baytril." (*Id.*, ¶ 106). He prescribed Amikacin, which successfully treated the MRSP infection. (*Id.*, ¶¶ 106-07). But the damage was already done; the infection "caused severe damage to Fyte's spine and prostate, [and] compromised his immune system and the ability of his blood to coagulate." (*Id.*, ¶ 107). He cannot compete or breed. (*Id.*).

## II.  Procedural Background

Ms. Bradley filed this lawsuit in New Jersey Superior Court on December 11, 2017, asserting claims for negligent treatment and failure to obtain informed consent. (ECF No. 1, at 1, 9, 18, 21). Defendants answered, the parties exchanged discovery (although disputes arose), and they actively litigated the case for nearly a year and a half. (*Id.*, at 1-2, 27). Plaintiff first claimed damages in excess of $75,000 on April 1, 2019. (*Id.*, at 2-3 ¶ 12, 51-52). Three days later, the Defendants removed the case to the

United States District Court for the District of New Jersey on diversity grounds. (*Id.*, at 7). In August 2019, Ms. Bradley filed the operative First Amended Complaint which, among other changes, revised the named Defendants as discussed above. (ECF No. 10). Defendants answered. (ECF No. 12).

The case was transferred with the joint consent of the parties on September 17, 2019. (ECF Nos. 14; 15; 16). Defendants immediately moved to dismiss the case for an insufficient amount in controversy because a damages cap applied under Maryland law. (ECF No. 20). The motion was denied in December 2019 because the amount in controversy exceeded $75,000 at the time of removal. (ECF No. 27). As a result, the court did not need to reach whether a cap on damages applied. Defendants' subsequent motion to reconsider was denied in September 2020. (ECF Nos. 30; 39). Again the court did not reach the damages cap question in light of a pending Maryland Court of Appeals case, *Anne Arundel County v. Reeves*, which was expected to address whether Maryland law "limit[s] the amount of damages recoverable for negligently causing the death of a pet." (ECF No. 39, at 3).

A decision was handed down in June 2021. *Anne Arundel Cnty. v. Reeves*, 474 Md. 46 (2021). Ms. Bradley filed the pending motions for leave to amend and to apply New Jersey law to the damages available on her veterinary malpractice claim in August. (ECF No. 44). Defendants opposed and cross-moved for partial

judgment on the pleadings.  (ECF No. 48).  Ms. Bradley replied. (ECF No. 52).  Although her reply was also docketed as a response in opposition to Defendants' cross-motion, Ms. Bradley nowhere addresses those arguments.  (*See generally id.*).

## III. State Law Governing the Damages Available on the Veterinary Malpractice Claim (Count I)

New Jersey choice of law rules govern because this case was first filed in New Jersey state court and removed to the District of New Jersey before being transferred here.  *See Ferens v. John Deere Co.*, 494 U.S. 516, 518–19 (1990) (citing 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).  Those rules apply issue-by-issue, *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 140 (2008), and employ a two-step inquiry.  The first step asks "whether the laws of the states with interests in the litigation are in conflict."  *In re Accutane Litigation*, 235 N.J. 229, 254 (2018) (quoting *McCarrell v. Hoffman-LaRoche, Inc.*, 227 N.J. 569, 584 (2017)).  "If there is not an actual conflict in the substance of the potentially applicable laws of the two jurisdictions, then there is no choice-of-law issue to be resolved and the forum state applies its own law."  *Id.* (internal citations and quotations marks omitted).  If there is a conflict, New Jersey courts choose the

law that governs by applying the Second Restatement's most-significant relationship test. *Id.,* at 257.[4]

It is necessary to review New Jersey and Maryland law before turning to this analysis. In New Jersey, common law may allow "damages based on the intrinsic value of the pet[.]" *McDougall v. Lamm*, 211 N.J. 203, 225 (2012). It may be difficult or impossible, however, to measure reduction in a pet's intrinsic value, particularly where the owner contends that the pet's subjective value far exceeds other plausible measures such as the pet's original purchase price, market value before injury, or cost of replacement.[5] New Jersey also allows "damages for pecuniary losses associated with medical treatment," at least if treatment costs exceed a pet's lost value. *See McDougall*, 211 N.J. at 223-25 (discussing *Hyland*, 316 N.J.Super at 25-26).

---

[4] Defendants incorrectly suggest that a governmental interest test applies. That test was replaced by the most-significant relationship test in *Camp Jaycee*. *McCarrell*, 227 N.J. at 589. The Supreme Court of New Jersey has said that the most-significant relationship test "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration." *Camp Jaycee*, 197 N.J. at 142 n.4.

[5] Pets are "not like other fungible or disposable property" and most "have no calculable market value beyond the subjective value to the owner[.]" *Hyland v. Borras*, 316 N.J.Super. 22, 25 (App.Div. 1998) (cited favorably in *McDougall*). They can be analogized to "heirlooms, family treasures and works of art that induce a strong sentimental attachment[.]" *Houseman v. Dare*, 405 N.J.Super. 538, 541, 543, 546 (App.Div. 2009) (cited favorably in *McDougall*). These considerations may be less relevant here because Fyte likely has a calculable market value.

In Maryland, a state statute narrowly defines the type of damages available, and caps total recovery. It states that "[a] person who tortiously causes an injury to or death of a pet . . . is liable to the owner of the pet for compensatory damages" but that those damages "may not exceed" a specific amount. Md. Code Ann., Cts. & Jud. Proc. § 11-110(b). Today, that amount is $10,000, *id.* § 11-110(b)(2), but in spring 2017 the amount was $7,500, 2017 Md. Laws Ch. 413 (S.B. 413). In addition, the law defines compensatory damages for injured pets as, "the reasonable and necessary cost of veterinary care." *Id.* § 11-110(a)(2)(ii). (For deceased pets, it also includes "the fair market value of the pet before death[.]" *Id.* § 11-110(a)(2)(i).) These damages are "exhaustive." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 63 (2021).

Both New Jersey and Maryland follow the majority rule and prohibit recovery of non-economic damages, like mental anguish and loss of companionship, where a pet is tortiously injured or killed. *McDougall*, 211 N.J. at 207, 221-22; *Reeves*, 474 Md. at 63, 69.

### A. Conflict

A clear conflict exists between New Jersey and Maryland law. A conflict of law "requires a substantive difference between the laws of interested states." *Cont'l Ins. Co. v. Honeywell Int'l, Inc.*, 234 N.J. 23, 46 (2018) (internal quotations and citation omitted). A difference is substantive "when the application of one or another state's law may alter the outcome of the case, or

8

when the law of one interested state is offensive or repugnant to the public policy of the other." *See In re Accutane*, 235 N.J. at 254 (internal citations and quotations marks omitted).[6]   Laws permitting different types of damages in different amounts conflict. *Mastondrea v. Occidental Hotels Mgmt. S.A.*, 391 N.J.Super. 261, 284 (App.Div. 2007); *Lebegern v. Forman*, 471 F.3d 424, 429 (3ᵈ Cir. 2006); *Kase v. Seaview Resort & Spa*, 599 F.Supp.2d 547, 551-52 (D.N.J. 2009).

Here, the outcome in Ms. Bradley's veterinary malpractice claim would differ depending on which state's law applies, most significantly because of Maryland's damage cap.  If New Jersey law applies, Ms. Bradley may be able to recover damages for the diminution in Fyte's value, which her allegations suggest could range from $50,000 to $161,794.52.  (ECF Nos. 10, ¶ 54 (minimum market value); 1, at 52 (lost income)).  In the alternative, she might recover all medical costs resulting from Defendants' alleged negligence, which she has estimated at $43,208.10, (ECF No. 1, at 52).  Either way, her damages would not be capped.  If Maryland law applies, Ms. Bradley can only recover up to $7,500 damages for veterinary costs.

---

[6] Ms. Bradley incorrectly suggests that this language means New Jersey courts will not apply another state's law where it is offensive to New Jersey public policy.  (ECF No. 44-2, at 6).  To the extent Maryland law offends New Jersey policy, that goes to the significant relationship analysis, not the conflict analysis.

### B.   Most-Significant Relationship[7]

The Second Restatement presumes that the "law of the state where the injury occurred" governs actions for injuries to tangible things.  Restatement (Second) of Conflict of Laws § 147.  This presumption is even stronger where the conduct and the injury occur in the same state because that "state will usually be the state of dominant interest, since the two principal elements of the tort . . . occurred within its territory."  *Id.* § 146, Comment d (cited in *id.* § 147, Comment d).[8]  The presumption applies here.  Ms. Bradley alleges that all of Defendants' conduct occurred in Maryland, including the surgery in which Fyte allegedly became infected with MRSP.  (*See* ECF No. 10, ¶¶ 8, 77-79, 85-92).

This presumption may be overcome if "some other state has a more significant relationship under the principles stated in Section 6 to the occurrence, the thing[,] and the parties[.]"  Restatement (Second) of Conflict of Laws § 147.  "[A]n assessment of each state's contacts' viewed through the prism of [S]ection

---

[7] Under the Second Restatement, New Jersey courts "will follow a statutory directive of [their] own state on choice of law."  Restatement (Second) of Conflict of Laws § 6(1).  Ms. Bradley does not point to a directive from the New Jersey Legislature.

[8] "The state where the defendant's conduct occurs has the dominant interest in regulating it and in determining whether it is tortious in character.  [ T]the state where the injury occurs will, usually at least, have the dominant interest in determining whether the interest affected is entitled to legal protection."  Restatement (Second) of Conflict of Laws § 147, Comment d.

145" will inform a court's analysis of the principles under Section 6. *See In re Accutane*, 235 N.J. at 259 (citing *McCarrell*, 227 N.J. at 590) (discussing identical language in Section 146).

Maryland has more contacts with this case. As noted above, the injury and the conduct that caused it occurred in Maryland. Other relevant contacts include: "the domicil, residence, nationality, place of incorporation and place of business of the parties, and [] the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2). These contacts are nearly entirely with Maryland. All Defendants either reside in or have their place of business in Maryland and the relationship between Ms. Bradley and the Defendants centered on Maryland because Defendants provided care to Fyte there. The sole contact with New Jersey is Ms. Bradley's residence.

The Second Restatement's guiding principles only reinforce that Maryland has the most significant relationship to Fyte, his injury, and the parties. "Reduced to their essence, the [S]ection 6 principles are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (synthesizing Restatement (Second) of Conflict of Laws § 6(2)). The first, third, and fifth of these—the interstate comity

11

interests, tort law interests, and interests of the states—further collapse.  *See id.*, at 148.

Both New Jersey and Maryland "have established tort law systems intended to compensate tort victims and deter wrong-doing," *Camp Jaycee*, 197 N.J. at 148, but they have reached "conflicting resolutions"," *Fairfax Fin. Holdings Ltd. v. S.A.C. Cap. Mgmt., L.L.C.*, 450 N.J.Super 1, 47 (App.Div. 2017) (citation omitted), of the type and amount of damages available when pets are tortiously injured.  New Jersey's approach is more protective of pet owners while Maryland's approach is more protective of veterinarians.  Application of each state's law would therefore frustrate the other's interest in its own tort law policies. Maryland's broader contacts with the case indicate that it has a more-significant relationship to it and a greater interest in enforcing its tort laws.  Not only did the allegedly tortious conduct and injury occur within its borders, but the veterinarians in question are licensed and practice there.

New Jersey does not have a heightened interest in consumer protection that could somehow overcome Maryland's strong interest in regulating professionals practicing within its borders.  New Jersey's Consumer Fraud Act does not apply to veterinarians.  *See Macedo v. Dello Russo*, 178 N.J. 340, 345-46 (2004).  Its broader scheme for regulating veterinarians does not tip the scales.  The Defendant veterinarians are not even licensed to practice in New

Jersey and therefore are not subject to its requirements.  The states' competing interests must be resolved in Maryland's favor because it has "a paramount interest in preventing and protecting against injurious conduct within its borders."  *Camp Jaycee*, 197 N.J. at 149 (quotation omitted).

The parties should have expected that Maryland law would apply.  Plaintiff traveled with Fyte to the Defendants' facilities in Maryland, where they are licensed and practice and cared for Fyte.  This result will also be more judicially administrable. Maryland's narrow definition of allowed damages and its damages cap will facilitate more efficient determination of damages should Defendants be found liable.

Ms. Bradley's motion to apply New Jersey law to the damages available on her veterinary malpractice claim will be denied. Maryland law will govern.

## IV.  Cross-Motion for Partial Judgment on the Pleadings on the Failure to Obtain Informed Consent Claim (Count II)

### A.    Standard of Review

Defendants move for partial judgment on the pleadings under Fed.R.Civ.P. 12(c) which permits such a motion "[a]fter the pleadings are closed--but early enough not to delay trial[.]" (For this reason, Defendants are construed to attack the operative First Amended Complaint, despite citing to the Second Amended Complaint.)  In reviewing a motion under Rule 12(c), courts apply

13

the same standard of review as for motions to dismiss under Rule 12(b)(6).  *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).  "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact."  *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States,* 702 F.3d 749, 751 (4th Cir. 2012)).

Under Fed.R.Civ.P. 12(b)(6), "the district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor."  *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."  *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

B.   **Analysis**

Ordinarily, it would be necessary to apply the same choice of laws test to the failure to obtain informed consent claim before turning to the applicable law's merits.  Defendants argue that no choice between laws is needed, and the claim should be dismissed, because both New Jersey and Maryland do not recognize a claim for failure to obtain informed consent to treat a pet.  Ms. Bradley did not respond to these facially valid arguments, and therefore abandons the claim.  *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim.").  This is not a case in which the court will decline to "grant a motion to dismiss based on the failure to file a timely opposition" because the motion is "plainly lacking in merit[.]"  *White v. Wal Mart Stores, Inc.*, No. 13-cv-0031-ELH, 2014 WL 1369609, at *2 (D.Md. Apr.4, 2014) (quotation omitted).  Quite the contrary.

Courts in other states have largely been skeptical that veterinarians have a duty to obtain an owner's informed consent before treating her pet.  *See Ladnier v. Norwood*, 781 F.2d 490, 493 & n.8 (5th Cir. 1986); *Repin v. State*, 198 Wash.App. 243, 273-77 (2017); *Ullmann v. Duffus*, No. 05AP-299, 2005 WL 3047433, at *7 (Ohio Ct.App. Nov. 15, 2005).  *But see Emes Stable v. Univ. of Pa.*, No. 85-cv-5402, 1988 WL 33893, at *1 (E.D.Pa. Apr. 4, 1988).

The court has not identified any New Jersey or Maryland cases addressing this question.  It appears to be one of first impression in both states and therefore one that requires argument from the Plaintiff to resolve.  It is, after all, her burden to show that a cause of action is recognized in a relevant jurisdiction. Defendants' cross-motion for partial judgment on the pleadings on the failure to obtain informed consent claim will be granted.

## V.    Motion for Leave to Amend

Ms. Bradley moves for leave to amend and file a proposed Second Amended Complaint.  (ECF No. 44-2, at 5).  She proposes to add three claims for (1) fraud, (2) breach of contract, and (3) unjust enrichment, and supporting factual allegations.  (ECF No. 44-5, at 3, 9-10, 13-14, 25-28).

All three new claims largely center on the same facts.  Ms. Bradley alleges that Dr. Ryan Gallager represented to her when she returned to Maryland with Fyte after the first surgery that "Fyte would receive rehabilitative therapy while in VOSM's care," VOSM's representatives told Ms. Bradley that Fyte received that therapy when he did not, and accepted payment from Ms. Bradley for the same.  (ECF No. 44-4, ¶¶ 90, 93, 95-96, 216, 219, 225, 227, 231-33).  In addition, Ms. Bradley alleges she was fraudulently induced to use Defendants' services when Dr. Sherman Canapp initially represented that "Fyte would be treated through rehabilitative therapy and chiropractic means before resorting to surgery,"

16

before she first visited Defendants' facilities and Dr. Gallagher recommended surgery. (*Id.*, ¶¶ 73, 82, 212).

Defendants contend that the statute of limitations has run on all three claims, that they would be prejudiced by allowing an amendment, and, even if not, that Ms. Bradley cannot state any of the new proposed claims.

**A.    Standard of Review**

When, as here, the right to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires[,]" and commits the matter to the discretion of the district court. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4ᵗʰ Cir. 2011). "A district court may deny a motion to amend when . . . the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4ᵗʰ Cir. 2010) (citation omitted). "A proposed amendment is [] futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4ᵗʰ Cir. 2019) (citation omitted). The standard of review on a motion to dismiss is described above.

**B.     Statute of Limitations, Relation Back, and Prejudice to Defendants**

Determining the applicable statute of limitations presents a potentially tricky question of civil procedure that neither party addresses.  Defendants contend that Maryland is the forum and that Maryland applies its own limitations periods.  Plaintiff does not contest that the statute of limitations has run on her new claims and argues exclusively that the claims relate back.

Defendants ignore that this case was transferred from the District of New Jersey.  It may be that New Jersey is the forum state for purposes of the newly proposed claims, as it is for the existing claims (as discussed above).  *See Sabol-Krutz v. Quad Elecs., Inc.*, No. 15-cv-13328, 2016 WL 1665156, at *1, *3 (E.D.Mich. Apr. 27, 2016) (applying California law to newly proposed claims in amended complaint).  Resolving this question could be consequential because New Jersey and Maryland have different rules for determining which state's statute of limitations applies and different limitations periods.  *McCarrell*, 227 N.J. at 583-84, 591-92, 596 (applying the two-step significant relationship test); *Lewis v. Waletzky*, 422 Md. 647, 664 (2011) (labeling statutes of limitations procedural and defaulting to Maryland law); N.J.S.A. 2A:14-1 (six-year limitations period); Md. Code Ann., Cts. & Jud. Proc. § 5-101 (three-year period).

Moreover, it is possible that Defendants' statute of limitations arguments are premature at least as to one proposed theory of fraud, which may be grounded in information that Ms. Bradley did not learn until an unspecified time during discovery. (ECF No. 44-4, ¶ 95); *see also Rodrigues v. Wells Fargo Bank, N.A.*, 751 F.App'x 312, 318 (3ᵈ Cir. 2019) (citation omitted) (holding a fraud claim accrues "from the later of the time [it] occurred or the time it could have been discovered with reasonable diligence"); *Windesheim v. Larocca*, 443 Md. 312, 326-27 (2015) (holding Maryland applies "discovery rule" to determine when a civil claim accrues).

The choice of laws question is moot here, however, because Ms. Bradley's three newly proposed claims relate back and their addition will not prejudice Defendants. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading[.]" Fed.R.Civ.P. 15(c)(1)(B); *see Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611 (4ᵗʰ Cir. 1980) (holding federal relation back rules control for state law claims). There must be (1) "a 'factual nexus' with the claims in the original complaint, and [(2)] the original complaint must have put the defendants on notice of the claim." *Brightwell v. Hershberger*, No. 11-cv-3278-DKC, 2016 WL 4537766, at *5 (D.Md.

Aug. 31, 2016) (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)).

There is a close factual nexus between the new claims and the claims in the original complaint.  They are grounded entirely in the same events – Defendants' treatment of Fyte between March and May 2017.  They involve the same individuals and the same interactions.  Ms. Bradley has not updated her factual allegations other than to include the text of a communication between her and Dr. Sherman Canapp, (ECF No. 44-4, ¶ 73), and the fact, apparently uncovered during discovery, that Defendants did not provide Fyte with rehabilitative therapy when he returned to their facility after the first surgery, (*id.*, ¶ 95).

The result is no different for the fraud claims even though they must be pleaded with particularity.  They arise from the same care alleged in the original complaint, and therefore are not akin to a defamatory statement with different content, made six months before existing defamation claims.  *See Gainsburg v. Steben & Co.*, 838 F.Supp.2d 339, 343-44 (D.Md. 2011).  Contrary to Defendants' assertions, Ms. Bradley is not attempting to "allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that period."  *See English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (4th Cir. 1999) (unpublished table opinion).

For the same reasons, Defendants were on notice, and could easily have expected, that Ms. Bradley might bring fraud, breach of contract, and unjust enrichment claims related to the care they provided Fyte.  Because they were on notice, Defendants are not prejudiced by the addition of these claims now.

### C.   Fraud, Breach of Contract, and Unjust Enrichment Claims

Defendants argue that Ms. Bradley fails to state any of the newly proposed claims under New Jersey law and that she fails to plead her fraud claims particularly.  Ms. Bradley contends that she adequately pleads each under Maryland law.

### 1.   Choice of Laws

As noted above, it is not clear what the forum state is and, therefore, whether New Jersey or Maryland choice of law rules apply.  As discussed below, there is no apparent conflict between the substantive laws of the two states for these claims and the court need not resolve which state's law governs at this time.

### 2.   Fraud

### a)   Particularity

Fraud claims are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b).  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).  Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind

21

may be alleged generally." The circumstances required to be pleaded with particularity "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313–14 (D.Md. 2000) (brackets in original) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).

Two of the instances of fraudulent inducement alleged by Ms. Bradley satisfy this requirement. She first alleges that Dr. Sherman Canapp falsely represented on February 27 that Fyte would receive rehabilitation before surgery, quoting an email from Dr. Canapp to Ms. Bradley. (ECF No. 44-4, ¶¶ 73, 212-13). She also alleges that on April 18, Dr. Gallagher "prescribed a treatment of rehabilitation and recommended that Fyte begin" treatment at VOSM without any intent to perform. (*Id.*, ¶¶ 90, 216-18). Plaintiff provides the who, what, and when of the pertinent fraud.

Ms. Bradley states that she also asserts a fraud claim for representations by "Defendants' representatives" or "representatives of" VOSM. (ECF Nos. 44-4, ¶ 291; 52, at 7). Any such claim will be dismissed because Ms. Bradley does not say who made the representations.

**b)  Failure to State a Claim**

In Maryland, fraud has five elements: (1) a false representation, (2) made with knowledge of, or reckless

indifference to, its falsity, (3) and with an intent to defraud, (4) that was relied on by the plaintiff, (5) to her detriment. *Crystal v. Midatlantic Cardio. Assocs., P.A.*, 227 Md.App. 213, 224 (2016) (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 703-04 (1998)); *see Rozen v. Greenberg*, 165 Md.App. 665, 674-75 (2005) (applied to fraudulent inducement claim).   New Jersey uses the same elements.   *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).   In both states, a false representation must have been material to the transaction for a plaintiff to have relied on it.   *Rosen*, 165 Md.App. at 675 (citing *Sass v. Andrew*, 152 Md.App. 406, 429 (2003)); *Gennari*, 148 N.J. at 610.   A false promise to perform can support a fraudulent inducement claim.   *Sass*, 152 Md.App. at 432; *Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 322 N.J.Super. 74, 95-96 (1999); *see also Refine Tech., LLC v. MCC Dev., Inc.*, No. 17-cv-5548, 2018 WL 3159874, at *3 (D.N.J. Feb. 21, 2018).

The first fraudulent inducement alleged by Ms. Bradley fails. She asserts that Dr. Sherman Canapp told her via email that he expected Fyte had a specific condition but wanted to evaluate him to confirm.   (ECF No. 44-4, ¶ 73).   He went on: "If rehabilitation and chiropractic treatments are not maintaining function, then we may consider an epidural (or series).   If there is no significant response, then surgery would be considered." (*Id.*).   Ms. Bradley claims   that   Dr.   Canapp   knew   Fyte   would   not   be   offered

rehabilitation before surgery and made the prior statement "with the intention of inducing Plaintiff to retain VOSM's services." (*Id.*, ¶¶ 212-214).

First, the statements alleged are not false. Dr. Canapp's statements about a possible treatment strategy were contingent on confirmation of the expected diagnosis. These were merely predictions of what might happen in the future, with no suggestion that they were recklessly made. *See Kiddie Academy Domestic Franchising, LLC v. Wonder World Learning, LLC*, No. 17-cv-3420-ELH, 2019 WL 1441812, at *17-19 (D.Md. Mar. 31, 2019). Dr. Canapp in no way promised that his practice would not pursue surgery first, nor suggested that he was speaking for Dr. Gallagher, who ultimately examined Fyte. Second, Ms. Bradley's own allegations demonstrate that trying rehabilitation before surgery was not material to her because she agreed to surgery once it was recommended.

By contrast, the second alleged fraudulent inducement, which Defendants don't appear to challenge, satisfies New Jersey and Maryland law. Although Ms. Bradley does not plead Dr. Gallagher's precise words, she alleges that he "prescribed a treatment of rehabilitation and recommended that Fyte begin" the care at VOSM's facilities and that Ms. Bradley left Fyte behind for that purpose. (ECF No. 44-4, ¶ 90). She claims that Dr. Gallagher never intended to perform those services, that they were not performed, and that

she nevertheless was charged and paid for them.  (*Id.*, ¶¶ 95-96, 216-218).  Assuming the two formed a contract, which is discussed further below, these allegations include a knowingly false statement made to induce Ms. Bradley to contract for rehab services with VOSM and that she relied on it to her detriment.  That is enough.  Ms. Bradley's fraud claim may proceed in part.[9]

### 3.   Breach of Contract and Unjust Enrichment

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages."  *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citation omitted).  Maryland requires the same.  *Kumar v. Dhanda*, 198 Md.App. 337, 345 (2011).

"To prove a claim for unjust enrichment [in New Jersey], a party must demonstrate [(1)] that the opposing party received a benefit and [(2)] that retention of that benefit without payment would be unjust."  *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288

---

[9] Defendants' argument that Dr. Debra Canapp cannot be liable for fraud because Ms. Bradley does not allege that she made any fraudulent statements is unpersuasive.  Ms. Bradley alleges that Dr. Canapp is a partial owner of VOSM and she may be vicariously liable for her partners' conduct.

(2016) (cleaned up).  The party must also show "that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* (quotation omitted).  Although Maryland has different formal requirements, they go to the same facts.  *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (Md. 2000) (requiring (1) "[a] benefit conferred upon the defendant," (2) "[a]n appreciation or knowledge by the defendant of the benefit," and (3) the acceptance "under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value").

Ms. Bradley states claims for breach of contract and unjust enrichment.  She alleges that she paid Defendants $3,018.45 for rehabilitation services that were never provided.  (ECF No. 44-4, ¶¶ 95-96).  There is no indication that Defendants have returned those funds to Ms. Bradley.  That Defendants did not provide rehabilitation services constitutes alleged breach and circumstances that would make it unjust for them to retain any benefit for those services.  Ms. Bradley's payment constitutes her damages and the benefit retained.  To the extent there is any uncertainty, it is only whether a contract existed.  Drawing all inferences in Ms. Bradley's favor, she plausibly alleges that Dr. Gallagher offered to provide rehabilitation services to Fyte and that she accepted when she left Fyte with VOSM.

Defendants argue that contract claims are not recognized in malpractice actions in Maryland unless there is a promise distinct from the promise to use all medical skill necessary. *See Heneberry v. Pharoan*, 232 Md.App. 468, 485 (2017). That rule does not apply. Defendants made Ms. Bradley a distinct promise – to provide rehabilitative services. Her breach claim is for failure to provide those services at all, not that Defendants provided the services negligently. In that sense, her fraud and breach claims present alternative, and not overlapping, theories of recovery. The cost of rehabilitation never provided likely would not be caused by Defendants' negligence, and could only sound in contract. If, however, Defendants provided those services negligently, that would support a malpractice claim, not one for breach.[10]  Ms. Bradley's breach and unjust enrichment claims may proceed.

**VI.  Conclusion**

For the foregoing reasons, Plaintiff's motion to apply New Jersey law to the damages available on her veterinary malpractice claim will be denied. Maryland law applies. Defendant's cross-motion for partial judgment on the pleadings will be granted.

---

[10] Defendants also argue that Ms. Bradley incorrectly named VOSM instead of the Spine Center in her contract-based claims, but the proposed Second Amended Complaint notes that VOSM is the business name for the Spine Center and is used to refer collectively to the two company defendants. (ECF No. 44-4, ¶¶ 12). Plaintiff's acknowledgment of any inartful pleading regarding the company names or otherwise is beyond the scope of this opinion. She may file a new motion for leave to amend as she sees fit.

Plaintiff's motion for leave to amend will be granted in part and denied in part.  Her new claims grounded in Dr. Gallagher's prescription of rehabilitation services that were allegedly never provided may proceed.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
